Dean M. Solomon (DS 3699)
Friedman Law Group LLP
270 Lafayette Street, 14th Floor
New York, New York 10012
(212) 680-5150
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
REBECCA SOLOMON,                                             :
                                                             :
                Plaintiff,                                   :   Index No. 07-CV-11079 (RJH)
                                                             :
      -against-                                              :   **ECF CASE**
                                                             :
THE MOUNT SINAI HOSPITAL, THE                                :   **COMPLAINT**
MOUNT SINAI MEDICAL CENTER, INC.,                            :
MOUNT SINAI NYU HEALTH, and                                  :
THE MOUNT SINAI MEDICAL CENTER                               :
EMPLOYER CONTRIBUTION 403(B) PLAN,                           :
                                                             :
                Defendants.                                  :
-------------------------------------------------------------x

Plaintiff, Rebecca Solomon ("Solomon"), by her attorney, Dean M. Solomon, alleges as follows:

### INTRODUCTION

1.      This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), ERISA §§ 2, *et seq.*, 29 U.S.C. §§ 1001, *et seq.*, brought pursuant to ERISA §§ 502(a)(1)-(3), 29 U.S.C. §§ 1132(a)(1)-(3), for breach of fiduciary duty and denial of benefits, in contravention of ERISA § 404(a), 29 U.S.C. § 1104(a), and The Mount Sinai Medical Center Employee Contribution 403(b) Plan ("Plan").

1

2.  Solomon seeks the full employer contribution benefits to which she and the Plan are entitled, and which were promised to her by the Defendants under the Plan, together with any appreciation value thereon, since her eligibility date of October 1, 2005.

3.  Solomon has, heretofore, exhausted all of her benefit claim and appeal rights under the Plan, and obtained her "right to sue" letter from the Defendants.

## JURSIDICTION

4.  This court has original and exclusive subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). Additionally, subject matter jurisdiction lies in this court pursuant to 28 U.S.C. § 1331 for "civil actions arising under the . . . laws . . . of the United States."

## VENUE

5.  Venue properly lies in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (*i*) the Plan is administered in this district, (*ii*) the breach took place in this district, and (*iii*) Defendants reside in this district. For these same reasons, venue also properly lies in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

6.  Plaintiff Solomon is a natural person residing in New York County, New York. At all relevant times, Solomon was an employee of the Defendants (except the Defendant Plan) within the meaning of ERISA § 3(6), 29 U.S.C. § 1002(6). At all relevant times, Solomon was also a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

7.  Defendant The Mount Sinai Hospital ("MSH") is a domestic not-for-profit corporation organized under the laws of the State of New York, with its principal place of business located at One Gustave L. Levy Place, New York, New York 10029. At all relevant

times, MSH was an employer of Solomon within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5). At all relevant times, MSH was also a Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); a Plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A); and a fiduciary within the meaning of ERISA § 3(21), 21 U.S.C. § 1002(21).

8. Defendant The Mount Sinai Medical Center, Inc. ("MSMC") is a domestic not-for-profit corporation organized under the laws of the State of New York, and with its principal place of business located at One Gustave L. Levy Place, New York, New York 10029. At all relevant times, MSMC was an employer of Solomon within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5). At all relevant times, MSMC was also a Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); and a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

9. Defendant Mount Sinai NYU Health ("MS NYU") is a domestic not-for-profit corporation organized under the laws of the State of New York, and with its principal place of business located at One Park Avenue, 11th Floor, New York, New York 10016. At all relevant times, MS NYU was an employer of Solomon within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5). At all relevant times, MS NYU was also a Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); and a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

10. Defendant Plan is an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2). The Plan Employer Identification Number ("EIN") is 13-1624096, and the Plan Number is 007. The Plan is a legal entity that can sue and be sued. However, in a breach of fiduciary duty action such as this, the Plan is neither a plaintiff nor a defendant, strictly

speaking. Rather, pursuant to ERISA § 409, 29 U.S.C. § 1109, and the case law interpreting it, the relief requested is as much for the benefit of the Plan itself as it is for Solomon.

## FIDUCIARY DUTIES

11.     ERISA imposes strict fiduciary duties upon Plan fiduciaries. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), states, in pertinent part: "[A] fiduciary shall discharge his duties with respect to a plan *solely in the interest of the participants and beneficiaries* and-- (A) *for the exclusive purpose of:* (i) *providing benefits to participants and their beneficiaries.*" (emphasis added).

12.     ERISA, thus, imposes upon Plan fiduciaries a duty of strict loyalty to the Plan's participants and their beneficiaries. That is, the duty to "discharge [their] duties with respect to a plan *solely* in the interest of the [Plan's] participants and beneficiaries and . . . for the *exclusive purpose* of . . . *providing benefits* to [them]." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) (emphasis added).

13.     ERISA also imposes upon Plan fiduciaries a duty of strict prudence to the Plan's participants and beneficiaries. That is, the duty to "discharge [their] duties with respect to a plan *solely* in the interest of the [Plan's] participants and beneficiaries and-- (B) *with the care, skill, prudence, and diligence under the circumstances* then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) (emphasis added).

14.     The duties of strict loyalty and strict prudence include the strict duty to disclose and inform. This duty includes: (*i*) the duty to not misinform participants and beneficiaries; (*ii*) the affirmative duty to inform participants and beneficiaries when the fiduciary knows or should know that the fiduciary's silence might be harmful to the participant or beneficiary; and (*iii*) the

duty to convey complete and accurate information material to the circumstances of participants and beneficiaries, and their enrollment status vis-à-vis the Plan.

15. These duties to disclose and inform (and not misinform) recognize that a disparity exists between the training and knowledge (and institutional knowledge) of the Plan fiduciaries, on the one hand, and the Plan participants and beneficiaries, on the other.

16. The duty to inform (and not misinform) must also be discharged in compliance with the regulatory requirements governing mandatory communications – i.e., the Summary Plan Description ("SPD"). For example, ERISA § 102(a), 29 U.S.C. § 1022(a), requires that the SPD "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." (A true and correct copy of the SPD is attached hereto as Exhibit 1.)

17. The statute further mandates that the SPD shall contain the following information: "the plan's requirements respecting eligibility for participation and benefits," and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." ERISA § 102(b), 29 U.S.C. § 1022(b).

18. A fiduciary may not avoid his fiduciary duties, however, by relying solely on the language of the SPD. While the SPD may outline the Plan's basic structure, the fiduciary may not blindly follow the SPD, if doing so leads to an imprudent result, or breaches the fiduciary's duty of loyalty to "provid[e] benefits" to participants and beneficiaries.

19. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires a fiduciary to "discharge his duties with respect to a plan *solely* in the interest of the participants and beneficiaries and-- (D) in accordance with the instruments and documents governing the plan [but only] *insofar* as such

documents and instruments are consistent with the provisions of this title and title IV." (emphasis added). Thus, a fiduciary is required to *disregard* the instruments and documents of the very plan he is charged with administering, if adherence to said instruments and documents would force the fiduciary to subvert his duties of loyalty and prudence to the plan's participants and beneficiaries.

## FACTS

20.     Solomon began her employment with Defendants on September 7, 2004, as a Senior Clinical Dietitian, at Mount Sinai Hospital/Mount Sinai Medical Center, located at One Gustave L. Levy Place, New York, New York 10029. Solomon was hired on a full-time basis, and has continually maintained her full-time status throughout her employment. At the time she was hired, and at all relevant times thereafter through January 2007, Solomon was known by her maiden name, Rebecca Blake.

21.     Shortly after beginning her employment, Solomon received from the Defendants the SPD for the Plan that was in effect at the time. The SPD Preamble reads: "This SPD has been written to reflect the main provisions of the Plan that are in effect on and after January 1, 2004. Although it does not explain all the technical details or cover all aspects of the Plan it will give you a very good understanding of your benefits and rights under the Plan." (Exhibit 1, SPD, at 3.)

22.     The SPD continues in "Section 1. Introduction" with respect to the Plan itself: "Certain employees, specified later in this SPD, are eligible for an Employer contribution from The Mount Sinai Hospital. By enrolling in the Plan and directing how Employer contributions are invested, you can realize significant additional financial support in meeting your retirement financial needs." (*Id.* at 4.)

23.     The SPD further elaborates in "Section 2. Who Is Eligible To Participate And When": "To become eligible for an Employer contribution under the Employer Contribution 403(b) Plan, you must be an employee who is hired on or after January 1, 2004, normally works at least 17.5 hours a week, and is in an eligible category designated in Appendix A contained within this SPD." (*Id.* at 5.) "The waiting period for Plan eligibility is generally one (1) year of service." (*Id.*) "An employee shall become eligible to become a participant in the Plan on the first day of the month coinciding with or immediately following completion of one year of service." (*Id.*)

24.     "Under Plan rules, the employee must complete the Investment Selection Form, up to three Investment Selection Company enrollment form(s) and beneficiary information (this beneficiary designation form may be contained within the Investment Company enrollment form or may be on a separate form) in order for Employer contributions to begin." (*Id.* at 7.)

25.     "Provided you have enrolled, completed a beneficiary designation form, selected your investment allocations for contributions with one, two, or all three available Investment Companies and satisfied the applicable waiting period, Employer contributions will commence with the first full paycheck you receive following the first day of the month coincident with or next following satisfaction of the waiting period." (*Id.*)

26.     Finally, the SPD advises in "Section 12. Getting Started - How To Enroll": "To facilitate the commencement of Employer contributions, The Mount Sinai Hospital will notify you via a certified home mailing approximately two months before you are expected to satisfy the Plan's waiting period requirement. This letter will give you important information such as the Employer contribution level for which you are eligible, when and where you should submit all the required enrollment forms, and of the schedule of enrollment/information sessions to be

held at your work location (Campus). . . . It is very important that you submit your enrollment forms in a timely manner as Employer contributions will not be made on your behalf until you have submitted all required enrollment forms, even if you are already in the Salary Reduction Contribution Plan contributing through payroll deductions." (*Id.* at 15 (paragraphing omitted).)

27. Nowhere in any of these sections, nor elsewhere in the SPD, does the SPD ever state that an employee must wait for the one year waiting period to expire (or is about to expire) before enrolling in the Plan. Similarly, nowhere in any of these sections, nor elsewhere in the SPD, does the SPD ever state that an enrollment executed before the waiting period has expired (or is about to expire) will be invalidated or disregarded. Nowhere does the SPD provide a date or time *before which* enrollment forms for the Plan will not be accepted. Rather, the SPD simply states that an employee must wait for the one year waiting period to expire before being eligible to participate in the Plan, and before any employer contributions may begin.

28. The SPD reads: "Under Plan rules, the employee must complete the Investment Selection Form, up to three Investment Selection Company enrollment form(s) and beneficiary information . . . in order for Employer contributions to begin." (*Id.* at 7.) "[C]ontributions will commence with the first full paycheck [the employee] receive[s] following the first day of the month coincident with or next following satisfaction of the waiting period." (*Id.*)

29. On December 6, 2004, Solomon completed her Investment Selection Form, her Investment Selection Company enrollment form, and her beneficiary designation information, and subsequently submitted these forms to Defendants' Human Resources department.

30. Specifically, Solomon completed the Employer Contributions section of the Investment Selection Form, by designating Vanguard to receive 100% of her total employer contributions under the Plan.

31. Solomon also completed the Employee Voluntary Contributions section of the same Investment Selection Form, also by designating Vanguard to receive 100% of her total employee voluntary contributions under the Defendants' Salary Reduction Contribution Plan.

32. The Investment Selection Company enrollment form she completed authorized Vanguard to receive contributions for Solomon under both plans.

33. Shortly thereafter, Defendants began deducting Solomon's employee voluntary contributions from her paycheck.

34. The Defendants never informed Solomon that they had elected to process her enrollment forms for the Salary Reduction Contribution Plan, but not the other (i.e., the Plan). Solomon had every reason to believe, therefore, and absolutely no reason to doubt, that Defendants would begin paying their employer contributions under the Plan as soon as Solomon had satisfied her one year waiting period requirement. In other words, Solomon believed, and had no reason to doubt, that her employer contributions would commence on her eligibility date of October 1, 2005.

35. Solomon also believed, and had no reason to doubt, that nothing further was required of her with respect to her enrollment in the Plan.

36. Unknown to Solomon, however, one of the Defendants' agents had drawn a line through the Employer Contributions section of Solomon's Investment Selection Form, thereby, presumably, invalidating her enrollment in the Plan.

37. Upon information and belief, said agent was Malka Konigsberg ("Konigsberg"), who worked in the Defendants' Human Resources department. Konigsberg's initials appear in the lower right corner of Solomon's Investment Selection Form, beside the handwritten date "12/30/04".

38. Upon information and belief, Konigsberg's handwriting also appears in the right margin of the Employer Contributions section of Solomon's Investment Selection Form, as the notation: "Elig 10/1/05 DOH 9/7/04".

39. Neither Konigsberg, nor anyone else for the Defendants, ever notified Solomon that these changes were made to her Investment Selection Form after she had submitted it to the Defendants' Human Resources department, and without her consent. Neither did anyone for the Defendants inform her at the time that her enrollment in the Plan had been thereby invalidated.

40. Solomon first learned that she had been disenrolled from the Plan, and that the Defendants had failed to pay her employer contribution benefits under the Plan, on March 29, 2007, when she contacted the Defendants about changing her beneficiary designation.

41. Solomon promptly completed another Investment Selection Form, completing again the Employer Contributions section of said form, by again designating Vanguard to receive 100% of her total employer contributions under the Plan. This 2007 Investment Selection Form Solomon completed in all material respects in exactly the same way that Solomon completed her first Investment Selection Form in 2004.

42. The following month, in April 2007, the Defendants began paying Solomon's employer contributions under the Plan.

43. On April 17, 2007, Solomon submitted, through her attorney, Dean M. Solomon, a claim for all retroactive benefits the Defendants owed her under the Plan, since her eligibility date of October 1, 2005. Said claim was submitted pursuant to Section 14 of the SPD. (Exhibit 1, SPD, at 16-17.)

44. Defendants denied the claim on July 20, 2007, and Solomon appealed on August 8, 2007.

45.     Defendants affirmed their denial on September 24, 2007.

46.     Defendants' stated reason for the affirmation was that "Solomon did not complete the necessary enrollment forms to join the Plan when she became eligible for the Plan after one year of service." (Letter from Jane Maksoud to Dean M. Solomon, dated September 24, 2007 (hereafter, "Letter"), at 1.) (A true and correct copy of the Letter is attached hereto as Exhibit 2.)

47.     The Letter was utterly silent, however, and failed to acknowledge the fact that Solomon *had* completed the necessary forms to enroll in the Plan *prior* to completing her one year of service.

48.     The Letter was also utterly silent, and failed to acknowledge the fact that an agent for the Defendants had crossed out the Employer Contributions section of Solomon's Investment Selection Form, without her knowledge or consent, nullifying Solomon's enrollment in the Plan.

49.     The Letter was also utterly silent, and failed to acknowledge the fact that none of the Defendants ever notified Solomon that her enrollment in the Plan had been invalidated. Nor did any of them ever communicate to her, either orally or in writing, that she needed to re-enroll in the Plan before her employer contribution benefits would begin.

50.     Lastly, the Letter was utterly silent, and failed to acknowledge the fact that nowhere in the SPD, nor in any of the Plan documents furnished to Solomon, did it state that an employee needed to wait for her one year waiting period to expire before being allowed to enroll in the Plan. Nowhere did it state that an employee who enrolls in the Plan "too early" will have her enrollment invalidated. And nowhere did it provide a date or time *before which* enrollment forms for the Plan would not be accepted.

51.     The Letter's silence in these regards clearly demonstrates that the Defendants' justification for their denial of Solomon's claim was nothing more than a pretext. To the extent

11

the Defendants made up their "early enrollment disqualification" rule in response to Solomon's claim, the Defendants breached their fiduciary duties of loyalty and prudence to Solomon. To the extent that the rule pre-existed Solomon's claim, the Defendants breached their fiduciary duty to disclose and inform Solomon (*i*) of the rule's existence, and (*ii*) of her disenrolled status with the Plan.

52. The Letter concluded by advising Solomon that she had now exhausted all her administrative remedies under the SPD, and that she now had "the right to bring a civil action pursuant to Section 502(a) of ERISA with respect to [her] benefit claim." (Exhibit 2, Letter, at 2.)

## FIRST CAUSE OF ACTION

53. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51 of this Complaint as though fully set forth herein.

54. Defendants breached their fiduciary duties to Plaintiff pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a), and as a result, Plaintiff has been wrongly deprived of benefits under the Plan.

## SECOND CAUSE OF ACTION

55. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 53 of this Complaint as though fully set forth herein.

56. Defendants breached their fiduciary duties to the Plan and its participants and beneficiaries, and as a result, Defendants are liable to make the Plan whole, under ERISA § 502(a)(2), 29 U.S.C. 1132(a)(2), for the Plan's attendant losses.

## THIRD CAUSE OF ACTION

57. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 55 of this Complaint as though fully set forth herein.

58. If, contrary to Plaintiff's allegations above, some of the Defendants are found not to be fiduciaries of the Plan, Plaintiff alleges in the alternative that said Defendants are liable as non-fiduciaries who knowingly participated in the fiduciary breaches of the other Plan fiduciaries described herein, for which said Defendants are liable pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. That this Court order Defendants to restore and make good and "make whole" to Plaintiff her losses as a result of the Defendants' breaches of their fiduciary duties;

B. That this Court award Plaintiff declaratory and injunctive relief as necessary and appropriate, including restoring all losses to Plaintiff under the Plan, caused by the Defendants' breaches of their fiduciary duty;

C. That this Court order that each of the Defendants is liable for equitable relief in the form of money paid to Plaintiff for violating their duties as fiduciaries and co-fiduciaries;

D. That this Court order Defendants to restore and make good and "make whole" to the Plan its losses as a result of the Defendants' breaches of their fiduciary duties;

E. That this Court award the Plan declaratory and injunctive relief as necessary and appropriate, including restoring all losses to the Plan, caused by the Defendants' breaches of their fiduciary duty;

F.  That this Court order that each of the Defendants is liable for equitable relief in the form of money paid to the Plan, its participants and beneficiaries, for violating their duties as fiduciaries and co-fiduciaries;

G.  That this Court enjoin Defendants from further violating their duties, obligations and responsibilities as fiduciaries, imposed upon them by ERISA, and the Plan instruments and documents, with respect to the Plan;

H.  That this Court award to Plaintiff reasonable costs and attorneys' fees as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable law; and

I.  That this Court grant such other and further relief as this Court may deem just and proper, including all taxable costs and interest, as provided by law.


Dated:  New York, New York
        December 7, 2007

                                    Respectfully submitted,

                                    _____
                                    Dean M. Solomon, Esq. (DS 3699)
                                    FRIEDMAN LAW GROUP LLP
                                    270 Lafayette Street, 14th Floor
                                    New York, New York 10012
                                    Tel.: (212) 680-5150
                                    Fax.: (646) 277-1151
                                    Attorney for Plaintiff